IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | |
|---|---|
| CLEMENTINE BROWN, ) </br> ) </br> Plaintiff, ) </br> ) </br> v. ) </br> ) </br> STEADMAN JODY GREENE, in his ) </br> individual capacity; COLUMBUS ) </br> COUNTY SHERIFF WILLIAM ROGERS ) </br> in his official capacity; and WESTERN ) </br> SURETY COMPANY, in its capacity as ) </br> Surety on the Official Bond of the Sheriff ) </br> of Columbus County, ) </br> ) </br> Defendants. ) </br> ) </br> ) | Civil Action No. 7:23-cv-1177 |

## COMPLAINT

1. Plaintiff Clementine Brown brings this action against Defendants—former Columbus County Sheriff Steadman Jody Greene in his individual capacity; Columbus County Sheriff William Rogers in his official capacity; and Western Surety Company, in its capacity as surety on the official bond of the Sheriff of Columbus County—for unlawful discrimination in violation of 42 U.S.C. § 1981 ("Section 1981"), 42 U.S.C. § 1983 ("Section 1983"), the North Carolina Constitution, and North Carolina common law.

## THE PARTIES

2. Plaintiff Clementine Brown is a Black woman and resident of Columbus County, North Carolina. Plaintiff was hired by the Columbus County Sherriff's Office in 1998. She worked there until her termination on or around July 30, 2020.

3. Defendant former Sheriff Steadman Jody Greene was sworn into office as the Sheriff of Columbus County in or around December 2018 and remained in office during the events at issue. Upon information and belief, Defendant Greene is a citizen and resident of Columbus County. He is being sued in his individual capacity.

4. Defendant Sheriff William Rogers was sworn in as Sheriff of Columbus County on or around January 5, 2023. Upon information and belief, Defendant Rogers is a citizen and resident of Columbus County. He is being sued in his official capacity.

5. Defendant Western Surety Company is the surety on the official bond of Defendant Greene as Sheriff of Columbus County pursuant to N.C. Gen. Stat. § 162-8 and § 58-76-5. Upon information and belief, Western Surety Company is owned by Continental Casualty Corporation, which is owned by Continental Corporation, a wholly owned subsidiary of CNA Financial Corporation. Upon information and belief, Defendant Western Surety Company is authorized to conduct business in North Carolina. Plaintiff institutes this action individually and, with respect to the claims on the official bond of Defendant Greene, also on behalf of the State of North Carolina pursuant to N.C. Gen. Stat. § 58-76-5, *et seq.*

6. Upon information and belief, Defendant Greene was insured during his time as Sheriff by liability insurance purchased pursuant to N.C. Gen. Stat. § 153A-435 or other applicable state law with respect to all acts and omissions complained of herein, or participated in a government risk pool pursuant to N.C. Gen. Stat. § 58-23-5, or maintained a funded reserve, and to such extent, Defendants Greene and Rogers have waived any official, sovereign, qualified, or governmental immunity to which they might otherwise be entitled in their official capacities.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3)-(4). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

8. Venue is proper in this district under 28 U.S.C. § 1391 because the causes of action arose in Columbus County, North Carolina.

## FACTS

9. The foregoing allegations are incorporated by reference.

10. Plaintiff Brown is a 49-year-old Black woman. She lives in Cerro Gordo, North Carolina. Brown has devoted her career to protecting and serving North Carolina residents.

11. Brown was hired by the Columbus County Sheriff's Office as a detention officer in 1998. She was promoted several times throughout her years of service and held positions as a corporal, sergeant, and lieutenant. In 2010, Brown was promoted to Captain over the Columbus County Detention Center. In 2014, Columbus County elected its first Black sheriff, Lewis Hatcher. Brown served as Captain of the Detention Center under Sheriff Hatcher.

12. Brown's performance as an officer for the Columbus County Sheriff's Office has always been exemplary.

13. In 2018, Defendant Greene was elected as Columbus County Sheriff in an election against Hatcher. Greene's election was immediately contested amid disputes over his residency status and other issues. Nonetheless, he was sworn into office on December 3, 2018.

14. At the time of Greene's installment as Sheriff, Brown was on medical leave from work. She returned to work in January 2019. Brown was the only Black woman and one of two Black employees on Greene's command staff.

15. Shortly after she returned to work, Greene removed Brown from her position as Captain. Greene told Brown that she was being demoted and not terminated because "unfortunately, [he] ha[dn't] heard nothing but good things about [her]." Brown was never given any explanation for why she was demoted. Greene wanted to fire Brown because of her race, and began looking for false, race-neutral excuses that could provide him pretext for her termination.

16. Greene informed Brown that another employee, Dawn Battle, would replace her as Captain of the Columbus County Detention Center. Battle, a white woman, was far less qualified for the job than Brown, who had held the position of Captain for nearly ten years. Indeed, Battle asked Brown to instruct her on how to perform the duties of Captain.

17. On January 11, 2019, Chief Deputy Aaron Herring gave Brown a personnel action form indicating her demotion. Herring apologized to Brown for the demotion and said that the decision was out of his control. As a result of the demotion, Brown's annual salary was reduced by approximately $10,000.

18. In early 2019, Greene was suspended from office pending the resolution of challenges to his election. Jason Soles, then-Captain of the Columbus County Sheriff's Office Investigations Division, assumed the duties of Sheriff but was never sworn into office.

19. During his suspension, Greene called Soles on the phone. Greene made highly offensive and racist remarks during the call with Soles. He also discussed firing Black employees at the Sheriff's Office because of their race. Soles recorded a portion of the call. Greene's recorded statements from the call include the following:

    (a) "I'm sick of it. I'm sick of these Black bastards. I'm gonna clean house and be done with it. And we'll start from there."

4

Case 7:23-cv-01177-FL   Document 1   Filed 07/21/23   Page 4 of 14

(b) "Tomorrow's gonna be a new fucking day. I'm still the motherfucking sheriff, and I'll go up and fire every goddamn [inaudible]. Fuck them Black bastards. They think I'm scared? They're stupid. I just don't know what else to do with it. So it's just time to clean them out."

(c) "Every Black that I know, you need to fire him to start with, he's a snake!"

20. Around the time of his phone call with Soles, Greene fired Melvin Campbell, a Black employee and sergeant at the Columbus County Sheriff's Office. Campbell was not given any explanation for his termination. Instead, he was simply told that "his services were no longer needed." Greene fired Campbell because he is Black.

21. Brown was concerned that Greene was looking for a pretextual reason to terminate her employment because of her race.

22. The Columbus County Board of Elections certified Greene's election as Sheriff in or around June 2019.

23. In 2020, Brown was working as a detention officer in the Columbus County courthouse. Brown baked and sold desserts outside of work to help make ends meet.

24. On July 22, 2020, Brown finished her shift at 5:00 p.m. She left work and went to Walmart to buy baking supplies for some dessert orders she planned to bake and deliver.

25. Brown filled her shopping cart with about 25 items and proceeded to purchase them at a self-checkout station. While scanning her items, Brown had a friendly conversation with a young boy and his father in the self-checkout area. As a result, Brown became distracted and mistakenly forgot to scan several bags of pecans.

26. Brown paid for the scanned items at Walmart and went home. Upon arriving home, Brown changed out of her uniform, went to the kitchen, and unpacked the shopping bags with the ingredients she bought at Walmart. While unpacking her bags, Brown realized that she had mistakenly forgotten to scan and pay for several bags of pecans.

27. Brown returned to Walmart that same evening. She explained her mistake to a service manager at Walmart. The service manager let Brown pay for the bags of pecans. Brown returned home.

28. Brown was worried Greene would use her simple mistake at Walmart as pretext to terminate her because of her race. Out of an abundance of caution, Brown decided to report the incident to the sergeant on duty at the courthouse. The sergeant told Brown that she corrected her mistake and had nothing to worry about. Brown also called Greene and Battle, but neither answered their phones.

29. On July 27, 2020, Battle told Brown that she was suspended pending an internal investigation into the pecan incident. Jeremy Barber, another Black employee and then-lieutenant in the Investigations Division, was assigned to conduct the internal investigation.

30. Barber interviewed Brown on July 29, 2020. Brown told Barber that she mistakenly forgot to scan and pay for some bags of pecans at a self-checkout station in Walmart. Brown explained that she realized her mistake a few hours later and went back to the Walmart to pay for the pecans that same evening.

31. In addition to conducting an internal investigation, members of the Columbus County Sheriff's Office command staff contacted Lieutenant Andre Jackson at the Whiteville Police Department on several occasions and pressured him to investigate and criminally charge Brown for her conduct at Walmart.

32. Jackson interviewed Brown about what happened. He also spoke with the loss prevention staff at Walmart and reviewed video footage of the incident. Based on his investigation, Jackson determined that Brown had not committed or attempted to commit any crime. Jackson found the pecan incident so minor that it was unworthy of a proper police report.

33. Based on his interactions with the Sheriff's Office command staff, Jackson felt the Sheriff's Office was attempting to have the Whiteville Police Department charge Brown with a crime so it could serve as a basis for terminating her employment. Jackson believed it would be unethical for him to charge Brown with a crime she did not commit. He subsequently told the Sheriff's Office that he would not bring any charges against Brown.

34. The Sheriff's Office, including Defendant Greene, aggressively pursued an internal investigation and urged Lieutenant Jackson to charge her with a crime because Greene wanted a pretextual reason to terminate Brown's employment.

35. Following Barber's investigation, Greene falsely claimed the pecan incident constituted Brown engaging in conduct unbecoming an officer. On July 30, 2020, Defendant Greene terminated Brown's employment. Greene did not provide a rationale for the termination. Greene had done nothing that warranted discipline, let alone termination. Greene in fact terminated Brown because of her race.

37. Sometime after terminating Brown, Greene demoted Barber—the only Black man on the command staff—from his position as a lieutenant in the Investigations Division to a deputy in the Civil Division. Greene demoted Barber because of his race.

38. In or around 2022, the State Bureau of Investigations ("SBI") opened an investigation into the Columbus County Sheriff's Office. The SBI gave the Columbus County

District Attorney's office a recording of the phone conversation between Soles and Greene.  The recording was also obtained and released by news outlets in or around September 2022.

39. In or around 2022, the North Carolina Governor's Highway Safety Program suspended all grant funding to the Columbus County Sheriff's Office and sent a notice to the Sheriff's Office indicating that the recording suggested it "may not be in compliance with Title VI of the Civil Rights Act of 1964[.]"

40. On October 4, 2022, the Columbus County District Attorney's Office filed a petition for removal of Sheriff Greene with the Columbus County Superior Court pursuant to N.C. Gen. Stat § 128-16 *et seq* and Article VI, § 8 of the North Carolina Constitution.  The court immediately suspended Greene from office and set a hearing on the removal petition for October 24, 2022.

41. The State filed an amended removal petition on October 21, 2022.  The petition alleged that Greene "personally, and through the direction of those under his command, engaged in racial profiling of Columbus County Sheriff's Office employees."  It also alleged, *inter alia*, that Greene engaged in intimidation and abuse of authority, failed to ensure a safe environment at the Columbus County Detention Center for inmates and staff, and engaged in a sexual relationship with a subordinate.

42. On October 24, 2022, Greene appeared before the Superior Court and resigned from his position as Sheriff.  Greene proceeded with his campaign for reelection as Columbus County Sheriff.

43. Columbus County commissioners appointed Defendant William Rogers as Sheriff following Greene's resignation.  In or around December 2022, Rogers promoted Jerome McMillan, a Black man, to the position of Chief Deputy.

44. Greene was reelected as Sheriff of Columbus County in November 2022. He was sworn into office on December 29, 2022. Shortly after assuming office, Greene demoted McMillan from his position as Chief Deputy.

45. On December 29, 2022, the State filed a second petition for Greene's removal with the Columbus County Superior Court. In the second removal petition, the State alleged that Greene "personally, and through the direction of those under his command, engaged in racial profiling of Columbus County Sheriff's Office employees." The petition also alleged, *inter alia*, that Greene engaged in intimidation and abuse of authority, failed to ensure a safe environment at the Columbus County Detention Center for inmates and staff, and engaged in a sexual relationship with a subordinate.

46. On January 4, 2023, Greene again appeared before the Superior Court for a hearing on the State's second petition for his removal. Greene again resigned from office at the outset of the hearing.

47. Rogers was again appointed as Sheriff of Columbus County and sworn into office on or around January 5, 2023.

**FIRST CAUSE OF ACTION**
**(42 U.S.C. §§ 1981 and 1983 – Unlawful Discrimination)**

48. The allegations in the preceding paragraphs are incorporated by reference.

49. This claim under 42 U.S.C. §§ 1981 and 1983 is brought by Plaintiff against all Defendants.

50. Defendant Greene terminated Plaintiff's employment with the Columbus County Sheriff's Office because of her race. There was no legitimate nondiscriminatory reason to terminate Plaintiff's employment.

51. Defendant Greene's termination of Brown's employment because of her race violates 42 U.S.C. § 1981. Defendants are therefore liable to Plaintiff under 42 U.S.C. §§ 1981 and 1983.

52. As a proximate result of Defendants' conduct, Brown has suffered loss of wages and benefits, emotional distress, humiliation, loss of reputation, and other damages.

53. Defendants' actions were done maliciously, willfully, or wantonly, or in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendants' conduct, Brown is entitled to recover punitive damages.

## SECOND CAUSE OF ACTION
### (42 U.S.C. § 1983 and U.S. Const. Amend XIV – Equal Protection)

54. The allegations in the preceding paragraphs are incorporated by reference.

55. This claim under 42 U.S.C. § 1983 is brought by Plaintiff against all Defendants.

56. Defendant Greene terminated Plaintiff's employment with the Columbus County Sheriff's Office because of her race. There was no legitimate nondiscriminatory reason to terminate Plaintiff's employment.

57. Defendant Greene was at all relevant times acting under color of law as the Sheriff of Columbus County.

58. By terminating Brown's employment because of her race, Defendants violated Plaintiff's equal protection rights under the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

59. Plaintiff's rights not to be subjected to such conduct were clearly established at the time of the misconduct.

60. As a proximate result of Defendants' conduct, Brown has suffered loss of wages and benefits, emotional distress, humiliation, loss of reputation, and other damages.

61. Defendants' actions were done maliciously, willfully, or wantonly, or in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendant's conduct, Brown is entitled to recover punitive damages.

## THIRD CAUSE OF ACTION
### (N.C. Const. Article I, Section 19 – Equal Protection)

62. The allegations in the preceding paragraphs are incorporated by reference.

63. This claim under Article I, Section 19 of the North Carolina Constitution is brought by Plaintiff Brown against Defendant Rogers in his official capacity, and Defendant Western Surety as surety on the official bond of the Sheriff of Columbus County.

64. Article I, Section 19 of the North Carolina Constitution provides that "[n]o person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin."

65. Defendant Greene terminated Plaintiff's employment with the Columbus County Sheriff's Office because of her race. There was no legitimate nondiscriminatory reason to terminate Plaintiff's employment.

66. Greene's termination of Brown because of her race violated Brown's rights under Article I, Section 19 of the North Carolina Constitution.

67. To the extent Plaintiff's Fourth Cause of Action is barred by the doctrine of governmental immunity, Plaintiff does not have an adequate remedy under state law for Defendants' violation of her rights under the North Carolina Constitution.

68. As a proximate result of Defendants' conduct, Brown has suffered loss of wages and benefits, emotional distress, humiliation, loss of reputation, and other damages.

69. Defendants' actions were done maliciously, willfully, or wantonly, or in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendant's conduct, Brown is entitled to recover punitive damages.

**FOURTH CAUSE OF ACTION**
**(Wrongful Discharge in Violation of North Carolina Public Policy)**

70. The allegations in the preceding paragraphs are incorporated by reference.

71. This claim under North Carolina common law is brought by Plaintiff against all Defendants.

72. Defendant Greene regularly employed more than 15 employees at all relevant times.

73. The North Carolina Equal Employment Practices Act ("NCEEPA"), N.C. Gen. Stat. § 143-422.1 *et seq.*, provides that it is the public policy of the State of North Carolina to "protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race[.]"

74. Defendant Greene violated the public policy of the State of North Carolina by terminating Plaintiff because of her race. Greene wrongfully discharged Brown in contravention of the express public policy of the State of North Carolina, which is actionable under North Carolina law.

75. As a proximate result of Defendants' conduct, Brown has suffered loss of wages and benefits, emotional distress, humiliation, loss of reputation, and other damages.

76. Defendants' actions were done maliciously, willfully, or wantonly, or in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendant's conduct, Brown is entitled to recover punitive damages.

**PRAYER FOR RELIEF**

Plaintiff requests the following relief:

(1) That the Court declare Defendants' practices complained of herein are unlawful under 42 U.S.C. §§ 1981 and 1983, the United States Constitution, the North Carolina Constitution, and North Carolina law;

(2) That the Court enter judgement in favor of Plaintiff and against Defendants for compensatory damages in an amount in excess of $25,000, with the exact amount of the damages to be determined by a jury and the interest to be determined by the Court;

(3) That the Court enter judgment in favor of Plaintiff and against Defendants for punitive damages in an amount in excess of $25,000, with the exact amount of the damages to be determined by a jury;

(4) That the Court award Plaintiff pre-judgment and post-judgment interest;

(5) That the Court award Plaintiff reasonable attorneys' fees and litigation expenses;

(6) That the costs of this action be taxed against Defendants; and

(7) Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues presented herein.

This the 21st day of July, 2023.

/s/ Narendra K. Ghosh
Narendra K. Ghosh, NC Bar No. 37649
nghosh@pathlaw.com
Trisha S. Pande, NC Bar No. 53573
tpande@pathlaw.com
Patterson Harkavy LLP
100 Europa Dr., Ste. 420
Chapel Hill, NC 27517
(919)-942-5200

*Counsel for Plaintiff*