IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:23-CV-1177-FL

| | |
|---|---|
| CLEMENTINE BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| STEADMAN JODY GREENE in his ) | |
| individual capacity; WILLIAM ROGERS in ) | ORDER |
| his official capacity as Columbus County ) | |
| Sheriff; and WESTERN SURETY ) | |
| COMPANY in its capacity as Surety on the ) | |
| Official Bond of the Sheriff of Columbus ) | |
| County, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court upon motion to dismiss by defendant Steadman Jody Greene ("Greene") (DE 15). The motion has been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, the motion is denied.

**STATEMENT OF THE CASE**

Plaintiff, who is a former employee of the Columbus County Sheriff, began this employment discrimination suit against defendant Greene in his individual capacity as the former Columbus County Sheriff, along with defendant William Rogers ("Rogers") in his official capacity as current Columbus County Sheriff, and Western Surety Company ("Western"), its surety. Plaintiff brings claims for race discrimination under 42 U.S.C. §§ 1981 and 1983, for wrongful discharge in violation of North Carolina Public Policy, and for violation of the North Carolina

Constitution as to defendant Rogers in his official capacity. Plaintiff seeks compensatory and punitive damages, as well as declaratory relief, interest, fees, and costs.

Defendant Greene filed the instant motion seeking dismissal of all claims against him for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff responded in opposition and defendant Greene replied. In the meantime, defendants Rogers and Western filed an answer, and the court entered a case management order setting a deadline for discovery October 1, 2024.

## STATEMENT OF FACTS

The facts alleged in plaintiff's complaint are as follows. Plaintiff "is a Black woman," who was "hired by the Columbus County Sherriff's Office as a detention officer in 1998." (Compl. ¶¶ 2, 10). "She was promoted several times throughout her years of service and held positions as a corporal, sergeant, and lieutenant." (Id. ¶ 11). "In 2010, [plaintiff] was promoted to Captain over the Columbus County Detention Center." (Id.). "In 2014, Columbus County elected its first Black sheriff, Lewis Hatcher," ("Hatcher"), and plaintiff "served as Captain of the Detention Center under Sheriff Hatcher." (Id.).

"Brown's performance as an officer for the Columbus County Sheriff's Office has always been exemplary." (Id. ¶ 12). "In 2018, Defendant Greene was elected as Columbus County Sheriff in an election against Hatcher." (Id. ¶ 13). "[H]e was sworn into office on December 3, 2018." (Id.). "At the time of Greene's installment as Sheriff, [plaintiff] was on medical leave from work," and she "returned to work in January 2019." (Id. ¶ 14). Plaintiff "was the only Black woman and one of two Black employees on Greene's command staff." (Id.).

"Shortly after she returned to work, [defendant] Greene removed [plaintiff] from her position as Captain." (Id. ¶ 15). "Greene told [plaintiff] that she was being demoted and not

2

terminated because 'unfortunately, he hadn't heard nothing but good things about her.'" (Id.). According to the complaint, "Greene wanted to fire [plaintiff] because of her race, and began looking for false, race-neutral excuses that could provide him pretext for her termination." (Id.).

Defendant Greene informed plaintiff that "another employee, Dawn Battle ['Battle'], would replace her as Captain of the Columbus County Detention Center." (Id. ¶ 16). "Battle, a white woman, was far less qualified for the job than Brown, who had held the position of Captain for nearly ten years." (Id.).

"In early 2019, [defendant] Greene was suspended from office pending the resolution of challenges to his election." (Id. ¶ 18). "Jason Soles ['Soles'], then-Captain of the Columbus County Sheriff's Office Investigations Division, assumed the duties of Sheriff but was never sworn into office." (Id.).

"During his suspension, Greene called Soles on the phone," and he allegedly "made highly offensive and racist remarks during the call with Soles." (Id. ¶ 19). "He also discussed firing Black employees at the Sheriff's Office because of their race." (Id.). "Soles recorded a portion of the call." (Id.). According to the complaint, "Greene's recorded statements from the call include the following:"

> (a) "I'm sick of it. I'm sick of these Black bastards. I'm gonna clean house and be done with it. And we'll start from there."
>
> (b) "Tomorrow's gonna be a new f***ing day. I'm still the motherf***ing sheriff, and I'll go up and fire every god**** [inaudible]. F*** them Black bastards. They think I'm scared? They're stupid. I just don't know what else to do with it. So it's just time to clean them out."
>
> (c) "Every Black that I know, you need to fire him to start with, he's a snake!"

3

(Id. ¶ 19).[1] "Around the time of his phone call with Soles, Greene fired Melvin Campbell ['Campbell'], a Black employee and sergeant at the Columbus County Sheriff's Office." (Id. ¶ 20). "Campbell was not given any explanation for his termination," and "[i]nstead, he was simply told that 'his services were no longer needed.'" (Id.).

Plaintiff "was concerned that Greene was looking for a pretextual reason to terminate her employment because of her race." (Id. ¶ 21). In July 2020, plaintiff was "working as a detention officer in the Columbus County courthouse." (Id. ¶ 23). On July 22, 2020, after her shift, plaintiff purchased some items at a Walmart, but "mistakenly forgot to scan several bags of pecans." (Id. ¶ 25). She realized her mistake, returned to the store, and paid for the pecans. "Out of an abundance of caution, [plaintiff] decided to report the incident to the sergeant on duty at the courthouse," who told her she "had nothing to worry about." (Id. ¶ 28).

According to the complaint, "Greene falsely claimed the pecan incident constituted [plaintiff] engaging in conduct unbecoming an officer." (Id. ¶ 35). "On July 30, 2020, Defendant Greene terminated [plaintiff's] employment" and "did not provide a rationale for the termination." (Id.). Plaintiff "had done nothing that warranted discipline, let alone termination." (Id.). "Sometime after terminating [plaintiff], Greene demoted [Jeremy] Barber—the only Black man on the command staff—from his position as a lieutenant in the Investigations Division to a deputy in the Civil Division." (Id. ¶ 37).

The State of North Carolina filed a "removal petition" against defendant Greene on October 21, 2022, which, according to the complaint, alleged that defendant Greene "personally, and through the direction of those under his command, engaged in racial profiling of Columbus County

---

[1] For purposes of the instant analysis, the court has replaced portions of offensive terms in the quoted text with asterisks.

Sheriff's Office employees." (Id. ¶ 41). "On October 24, 2022, [defendant] Greene appeared before the Superior Court and resigned from his position as Sheriff." (Id. ¶ 42). "Columbus County commissioners appointed [d]efendant Rogers as Sheriff following Greene's resignation." (Id. ¶ 43). "In or around December 2022, Rogers promoted Jerome McMillan ["McMillan"], a Black man, to the position of Chief Deputy." (Id.). Defendant Greene was, however, reelected as Sheriff of Columbus County in November 2022, and was sworn into office December 29, 2022. Shortly thereafter, defendant Greene demoted McMillan from the position of Chief Deputy.

On December 29, 2022, the State filed a second petition for defendant Greene's removal with the Columbus County Superior Court, including the same allegations as the first petition. "On January 4, 2023, Greene again appeared before the Superior Court for a hearing on the State's second petition for his removal." (Id. ¶ 46). "Greene again resigned from office at the outset of the hearing." (Id.). Defendant "Rogers was again appointed as Sheriff of Columbus County and sworn into office on or around January 5, 2023." (Id. ¶ 47).

## COURT'S DISCUSSION

A.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).[2] "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further

---

[2]  Throughout this order, internal quotation marks and citations are omitted unless otherwise specified.

factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B.      Analysis

1.      Section 1981 and 1983 Claims

Defendant Greene argues that the factual allegations in the complaint are insufficient to state a claim for race-based employment discrimination under federal law against him. The court disagrees.

To state a race discrimination claim under 42 U.S.C. § 1981, a plaintiff must plead facts supporting an inference that "but for race, [plaintiff] would not have suffered the loss of a legally protected right." Comcast Corp. v. Nat'l Ass'n of African-American Owned Media, 140 S. Ct. 1009, 1019 (2020). "[W]hen suit is brought against a state actor, § 1983 is the exclusive federal remedy for violation of the rights guaranteed in § 1981." Dennis v. Cnty. of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995). For purposes of the instant analysis, "the elements required to establish such a case [of race discrimination] are the same under" §§ 1981 and 1983, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) ("Title VII"). Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004).

"[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination to survive a motion to dismiss." Bing v. Brivo Sys., LLC, 959 F.3d 605, 616 (4th Cir. 2020). Instead, such a plaintiff "is required to allege facts to satisfy the elements of a cause of action created by th[e] statute." Id. This means that a complaint's allegations must "establish a plausible basis for believing that race was the true basis for the adverse employment action." McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th

6

Cir. 2015). The court's "inquiry is whether [the plaintiff] alleges facts that plausibly state a violation . . . above a speculative level." Bing, 959 F.3d at 616.

Plaintiff's complaint meets this pleading standard for the federal discrimination claims against defendant Greene. A plausible inference "that race was the true basis for the adverse employment action" is drawn from a combination of allegations in the complaint. McCleary-Evans v. Maryland Dep't of Transp., 780 F.3d at 585. In particular, plaintiff alleges that soon after defendant Greene started in January 2019, plaintiff, as "the only Black woman and one of two Black employees on Greene's command staff," was demoted without explanation, and replaced in her position by a white woman who "was far less qualified for the job." (Compl. ¶¶ 14, 16). Then, in early 2019, defendant Greene allegedly "discussed firing Black employees at the Sheriff's Office because of their race." (Id. ¶ 19). He allegedly stated he was "sick of these Black bastards," and he stated his intention to "clean house." (Id.). He also stated his intention to "fire every goddamn [inaudible]," and to "F*** them Black bastards," and "[e]very Black that I know, you need to fire him," all giving rise to an inference, viewing the complaint in light most favorable to plaintiff, that defendant Greene then had the stated intention to fire each Black employee, including plaintiff, because of their race. Thereafter, in July 2020, defendant Greene fired plaintiff even though she "had done nothing that warranted discipline, let alone termination." (Id. ¶ 35). He also fired Campbell and "demoted Barber – the only Black man on the command staff." (Id. ¶ 37). The combination of these alleged circumstances are sufficient to state a claim for race discrimination.

Defendant Greene argues that the alleged "derogatory comments" he allegedly made in 2019 are too separated in time from plaintiff's termination in 2020 to give rise to an inference of discrimination in plaintiff's termination, relying upon Alberti v. Rector & Visitors of the Univ. of

7

Virginia, 65 F.4th 151, 155 (4th Cir. 2023). (Def's Mem. (DE 16) at 7). However, this argument is premised on a limited view of the alleged facts and does not draw inferences in plaintiff's favor as the court must, at this stage of the case. The instant complaint includes not only allegations of "derogatory comments" by a supervisor, but also alleges express intentions by defendant Greene, as employer, to "fire every god**** . . . Black" in his office, coupled with additional racially offensive and derogatory comments. (Compl. ¶ 19).

Alberti is inapposite because of the differences between the facts alleged in the instant case and those alleged in Alberti. There, a student in a research assistant position at the University of Virginia alleged his "supervisor discriminated against him because he was a Swiss national." 65 F.4th at 153. He claimed that when "he reported the incidents of alleged discrimination—disparaging comments from his supervisor—to the school . . . his supervisor retaliated by giving him bad grades" and dismissing him. Id. The allegedly "negative comments" began in 2016, four years before he was dismissed, and included remarks such as "he did not speak the correct German language because it is the German used by the Swiss," and after the plaintiff brought Swiss chocolates as a thank you gift, his supervisor said "at least, the Swiss are able to manufacture chocolate." Id. In 2018, he said "the Swiss are 'nationalists' and 'hunters' who must 'defend their country,'" and that "grocery stores in Switzerland don't provide good salads and veggies." Id. at 153-154.

The allegations in the instant case are categorically different in nature and degree from those in Alberti, rendering comparison to Alberti inapt, for several reasons. First, where Alberti concerned the inferences that can be drawn from "derogatory comments," Id. at 155, the instant complaint alleges not just derogatory comments by a supervisor but the employer's express statements of an intent to fire Blacks. (Compl. ¶ 19). Second, the alleged statements in the instant

8

Case 7:23-cv-01177-FL   Document 26   Filed 02/01/24   Page 8 of 15

case are also more overtly tied to race, using profanity and offensive slurs, whereas those in Alberti are not. Indeed the court in Alberti "question[ed] whether comments about bad salads or vegetables, predispositions to kidney stones and hunting and defending their country are even the sort that give rise to Title VII liability." Id. at 156 n. 4. Third, the derogatory comments in Alberti took place over a more remote span of time than here. Finally, plaintiff here alleges intervening events such as her demotion in favor of a less qualified white woman, as well as firing of Campbell, and demotion of Barber, further giving rise to a "plausible basis for believing that race was the true basis for the adverse employment action." McCleary-Evans, 780 F.3d at 585. In sum, Alberti is inapposite.

Defendant Greene argues that adverse employment actions against Campbell and Barber cannot give rise to an inference of discrimination, suggesting they are not "valid comparator[s]." (Def's Mem. (DE 16) at 8). This argument is unavailing. For purposes of the instant analysis, the court does not consider Campbell and Barber "comparators" in order to establish a claim of race discrimination. Rather, the alleged adverse actions against Campbell and Barber, as described in the complaint, provide additional circumstances giving rise to a plausible inference, when coupled with the quoted statements by defendant Greene in the complaint, of discriminatory intent. See Woods v. City of Greensboro, 855 F.3d 639, 649 (4th Cir. 2017) ("This Court may infer discriminatory intent from evidence of a general pattern of racial discrimination in the practices of a defendant.").

Defendant Greene suggests that allegations about employment actions against Campbell and Barber are too removed in time and not probative under the alleged circumstances, especially where "the practice of newly elected sheriffs replacing deputies is no secret." (Def's Reply (DE 21) at 5) (quoting Jenkins v. Medford, 1:95cv126-T, 1995 U.S. Dist. LEXIS 21521, at *13-14

9

(W.D.N.C. Nov. 27, 1995)). This suggestion, however, relies upon drawing inferences from the facts in favor of defendant Greene, as well as facts not alleged in the complaint, rather than drawing inferences from the allegations in favor of plaintiff as the court must do at this juncture. See Nemet Chevrolet, Ltd., 591 F.3d at 255. In this case, where plaintiff alleges defendant Greene made statements about his intentions to fire "every Black" employee, (Compl. ¶ 19), allegations of employment actions against Campbell and Barber support a plausible inference of race discrimination in plaintiff's termination.

Defendant Greene also contends that allegations about separate proceedings brought in state court against defendant Greene "are not integral to the complaint and should not be considered." (Def's Mem. (DE 16) at 9). This argument is beside the point, however, because the court does not rely upon plaintiff's allegations regarding state court proceedings to hold that plaintiff has stated a claim for race discrimination. The court includes plaintiff's allegations about the state court proceedings to provide context to the conclusion of defendant Greene's employment as sheriff. The court leaves for another day, upon a more complete record, determination of the relevance and significance of any allegations or charges brought against defendant Greene in other proceedings.

Defendant Greene argues he is intitled to qualified immunity, suggesting that "[n]o controlling authority supports the argument that racially derogatory comments, made 12 months prior to the adverse employment actions and in connection with an unrelated event, give rise to an[] inference of discrimination." (Def's Mem. (DE 16) at 12). As discussed above, however, defendant Greene's argument is based upon incorrect factual premises. The complaint does not allege merely racially derogatory comments or connection to an "unrelated event." (Id.). Instead, defendant Greene's statements reflect his intention to fire Blacks and it is plausible to infer such

statements are connected to plaintiff's termination. Drawing inferences in plaintiff's favor, it is "clearly established" that plaintiff has "allege[d] facts to satisfy the elements of a cause of action created by th[e] statute." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011); Bing, 959 F.3d at 616. Therefore defendant Greene is not entitled to dismissal on the basis of qualified immunity.

In sum, plaintiff has stated a claim for race discrimination under §§ 1981 and 1983 against defendant Greene. Accordingly, defendant Greene's motion to dismiss in this part is denied.

2. Wrongful Discharge in Violation of Public Policy

Defendant Greene argues that plaintiff's wrongful discharge claim must be dismissed because North Carolina law does not authorize an individual capacity wrongful discharge claim against a sheriff. This argument presents a close and unsettled question of interpretation of North Carolina law. At this juncture, dismissal of plaintiff's claim on this basis is not warranted.

North Carolina General Statute § 143-422.2, also known as the North Carolina Equal Employment Practices Act ("NCEEPA"), provides:

> It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

N.C. Gen. Stat. § 143-422.2(a); Smith v. First Union Nat. Bank, 202 F.3d 234, 247 (4th Cir. 2000). While "[n]either the North Carolina Supreme Court nor the North Carolina Court of Appeals has recognized a private cause of action under NCEEPA," Smith, 202 F.3d at 247, "this statute does apply to common law wrongful discharge claims or in connection with other specific statutory remedies." McLean v. Patten Cmtys., Inc., 332 F.3d 714, 720 (4th Cir. 2003) (emphasis added); see Amos v. Oakdale Knitting Co., 331 N.C. 348, 353 (1992) ("At the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes.").

11

Under North Carolina law, a "sheriff has singular authority over his or her deputies and employees and is responsible for their actions." Young v. Bailey, 368 N.C. 665, 669 (2016). "[E]ach sheriff has the exclusive right to hire, discharge, and supervise the employees in his office." Id. Accordingly, a sheriff is the proper defendant in a wrongful discharge action brought by a sheriff's office employment, provided the claim is based upon "acts [that] violate the public policy of North Carolina." Id. at 668.

The North Carolina Supreme Court has not addressed whether a sheriff in his or her individual capacity and/or official capacity is the proper defendant in a common law wrongful discharge action. The North Carolina Court of Appeals, as well as the Fourth Circuit in an unpublished decision, however, has held that such an action may be brought against a sheriff in his individual capacity, depending on alleged circumstances.

In particular, in Phillips v. Gray, 163 N.C. App. 52, 57 (2004), the North Carolina Court of Appeals recognized that "[s]overeign immunity does not shield public officials from personal liability for any actions which may have been corrupt, malicious or perpetrated outside and beyond the scope of official duties." Id. at 57. Accordingly, the court reasoned, "sovereign immunity does not bar [a] plaintiff's claim against [a sheriff] in his individual capacity." Id. Further, in that case, the court held that a plaintiff "sufficiently evidenced [a] wrongful discharge claim against [a sheriff defendant] individually, where the plaintiff was fired for cooperating with FBI agents investigating a sheriff for "mismanagement of . . . marijuana." Id.

In Townsend v. Shook, 323 F. App'x 245 (4th Cir. 2009), the Fourth Circuit vacated the grant of "summary judgment in favor of [a sheriff], sued <u>in both his individual and official capacities</u> . . . with respect to [a plaintiff's] claim alleging wrongful discharge in violation of North Carolina public policy, as stated in North Carolina General Statute § 143–422.2, because she

12

rebuffed [the sheriff's] sexual advances." Id. at 251 (emphasis added). In so holding, the court "express[ed] no opinion on [the sheriff's] claim to governmental immunity in his official capacity," but expressed no reservation on the claim against the sheriff in his individual capacity. Id.

Thus, in light of Phillips and Townsend, defendant Greene's motion to dismiss plaintiff's wrongful discharge claim is without merit. Defendant Greene urges the court to disregard Phillips and Townsend because they are not controlling law. Nevertheless, this court "must follow the decision of an intermediate state appellate court unless there is 'persuasive data' that the highest court would decide differently." Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013). Defendant Greene has not at this juncture presented any such persuasive data.

Defendant Greene argues that Phillips is inapposite because the public policy violation at issue was not based upon NCEEPA, but rather the "public policy of this state that citizens cooperate with law enforcement officials in the investigation of crimes." (Def's Reply (DE 21) at 7). Defendant Greene also suggests Phillips is inapposite because it "did not rely upon Title VII analysis." (Id.). Defendant Greene, however, conflates two issues addressed in Phillips, with the first being whether the discharge was in violation of public policy, and the second being who is the appropriate defendant, and in what capacity, for a common law wrongful discharge claim against a sheriff. Phillips is beside the point on the first issue, because it is established otherwise that a wrongful discharge in violation of public policy may be based upon race discrimination in violation of § 143-422.2. See McLean, 332 F.3d at 721 ("[W]hen the record indicates . . . that [plaintiff's] separation may have been caused because of her race, . . . she has stated a cause of action under the state law of North Carolina under § 143-422.2.").

13

Defendant Greene likewise has not forth persuasive evidence that the North Carolina Supreme Court would rely upon Title VII analysis in determining the issue of the proper defendant in a common law wrongful discharge claim against a sheriff. For example, defendant Greene cites White v. White, No. 5:19-CV-467-BO, 2021 WL 2345352 (E.D.N.C. June 8, 2021), for the proposition that "in North Carolina, each county's sheriff is an 'employer' within the meaning of Title VII and must be named as a defendant in a Title VII suit," and that "[t]he sheriff is liable, however, in his official not his individual capacity." Id. at *2. White, however, did not address a common law claim for wrongful discharge premised upon NCEEPA, and it did not address Phillips or Townsend. Defendant Greene also cites Wilson v. Nash Edgecombe Econ. Dev., Inc., No. 5:19-CV-322-FL, 2020 WL 5594538 (E.D.N.C. Sept. 18, 2020) for the proposition that "[i]n interpreting the NCEEPA, North Carolina courts are guided by federal case law developed pursuant to Title VII." Id. at * 8. Wilson, however, also does not address Phillips or Townsend and it does not address a wrongful discharge claim against a sheriff.

Defendant Greene also argues that plaintiff's NCEEPA claim fails for the same reasons as plaintiff's federal discrimination claims. Where the court has determined that defendant Greene is not entitled to dismissal of plaintiff's federal discrimination claims against him, this basis for dismissal of the NCEEPA claim also fails as a matter of law. In sum, the court leaves for determination on a more complete record whether plaintiff's claims against defendant Greene are viable.

14

## CONCLUSION

For the forgoing reasons, defendant Greene's motion to dismiss (DE 15) is DENIED.

SO ORDERED, this the 1st day of February, 2024.

                                            LOUISE W. FLANAGAN
                                            United States District Judge